UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IBRAHIM EKAIDI<br>*PLAINTIFF*<br>v.<br>BOARD OF SUPERVISORS OF THE SOUTHERN UNIVERSITY SYSTEM, MURTY S. KAMBHAMPATI, JOE OMOJOLA, JOSEPH OLUBADEWO, HENRY EFESOA MOKOSSO, DAVID ADEGBOYE AND VICTOR UKPOLO<br>*DEFENDANTS* | CIVIL ACTION NO.<br><br>JUDGE<br><br>MAGISTRATE JUDGE<br><br><br><br>JURY TRIAL DEMANDED |

## ORIGINAL COMPLAINT

### NATURE OF THE ACTION

This action arises, generally, under the Equal Protection Clauses of the 14th Amendment of the United States Constitution and the laws of the United States. More specifically, this action arises under Title VII of the Civil Rights Act of 1964 and under 42 U.S.C. § 1985(3) (Conspiracy) and under the relevant laws of the state of Louisiana.

1. Plaintiff Ibrahim Ekaidi (Ekaidi) asserts that Murty S. Kambhampati (Kambhampati) (Indian, Hindu) and David Adegboye (Adegboye) (Nigerian, Christian) Joe Omojola (Omojola) (Nigerian, Christian), Joseph Olubadewo (Olubadewo) (Nigerian, Christian), Henry Efesoa Mokosso (Mokosso) (Cameroon, Christian), and Victor Ukpolo (Ukpolo) (Nigerian,

1

Christian) acting in their individual capacities as administrators and employees of Southern University at New Orleans (SUNO) acted under color of state law and conspired in diverse ways to threaten to fire him from his job at SUNO and exclude him from further participation in the deliberations of a hiring committee on the basis of Ekaidi's race, religion and ethnicity. When Ekaidi protested, he was threatened with further disciplinary action and termination. As a result of Ekaidi's removal two Muslim candidates rated as two and three out of a field of eighteen were dropped from consideration. Thereafter, Kambhampati, as the Chair of the Science Department, ignored institutional rules and guidelines and substituted his judgment for that of the hiring committee.

2. The result of Kambhampati's and Adegboye's conspiracy referenced in paragraph one, above, was the hiring of two Nigerian Christians: one, who had not taught, published or done research in fifteen years; the other, a young pregnant woman with no scientific publications at all. Both of the new Nigerian hires were members of an organization called the New Orleans chapter of the African Christian Fellowship (ACF), and each had socialized with, at a minimum, Omojola, Adegboye and Ukpolo prior to their hire at ACF functions. The so-called African Christian Fellowship was, and, on information and belief presumably is, a commercial front organization whose purpose was, in part, to serve as a conduit for earnings based on prostitution and human trafficking.

3. Actions taken against Ekaidi were taken solely because of Ekaidi's race, religion, ethnicity and national origin, (Syrian, Semitic, Muslim) and the

desire on the part of Kambhampati, Adegboye and the other named defendants to hire unqualified faculty members primarily on the basis of their race and religion.

4. On information and belief the percentage of Nigerian nationals employed in Biology, a constituent part of the Department of Natural Sciences, has gone from approximately 20% in 2007 (1 Nigerian) to over 60% (5 Nigerians) in 2015-6.

5. Integral to, and in consequence of, this unofficial institutional practice of increasing the number and ratio of Nigerian nationals were efforts to rid SUNO of non-Nigerian faculty who might challenge or impede the attempt of the named conspirators and others to bring in further Nigerian nationals, both faculty and students, at the expense of better qualified non-Nigerians. These attempts led to a manifestation of general hostility and an objectively hostile work environment toward certain non-Nigerian faculty based on factors of nationality and ethnicity.

## STATEMENT OF JURISDICTION

6. Plaintiff presents questions of Federal law to this Court. Furthermore, Plaintiff files this action pursuant to their receipt of "Right To Sue" letters from the U. S. Department of Justice in connection with his previous Equal Employment Opportunity Commission (EEOC) charge. It has been less than ninety days from the time at which Plaintiff first received notice of his right to sue from the U.S. Department of Justice. Jurisdiction is conferred upon this court, *inter alia*, by the provisions of 28 U.S.C.§1331.

Supplemental jurisdiction is conferred upon this court over Plaintiff's state law claims pursuant to 28 U.S.C. 1367(a).

## PARTIES

7. Plaintiffs Ibrahim Ekaidi is a male person of the full age of majority who at all times relevant resided in the Parish of Jefferson, State of Louisiana. Ekaidi was born, raised and educated in the first instance in Syria. He is an Arab of Asian ancestry and Muslim religion. Ekaidi is a practicing Muslim. He prays daily. His given name is Ibrahim (otherwise Abraham) which has religious connotations in the Muslim faith. He has a pronounced middle-eastern accent. He heads what might be termed a traditional Muslim household; his wife does not work outside the home. In public and on campus she wears the traditional scarf and long, modest dress of the Muslim housewife. Dr. Ekaidi wears traditional Arab dress on campus on various occasions, including International Day. He takes Muslim holy days off from work.

8. Made defendant herein are the Board of Supervisors of the Southern University System (Board of Supervisors), authorized to do and doing business in the Parish of Baton Rouge, Louisiana. At all times pertinent hereto, Defendant Board of Supervisors is a political subdivision of the State of Louisiana which is subject to the supervisory powers vested in the State Board of Regents. The Board of Supervisors of the Southern University System exercises supervisory control over its constituent institution, Southern University at New Orleans (SUNO). The Board of Supervisors is an employer as defined by the

Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* and is thus amenable to suit.

9. Additionally made defendant in his personal capacity is Murty S. Kambhampati (Kambhampati), a person of the full age of majority and a native of the Parish of St. Tammany, State of Louisiana. Kambhampati is Hindu and a native of India, who was at times relevant to the facts of this complaint, Chair of the Department of Natural Sciences, who at times acted under color of state law, and was engaged in conducting the business of the university.

10. Additionally made defendant in his personal capacity is Joe Omojola (Omojola), a person of the full age of majority and a native of the Parish of Jefferson, State of Louisiana. Omojola is a Christian native of Nigeria, who was at times relevant to the facts of this complaint, Chair of the Selection (Hiring) Committee, who at times acted under color of state law, engaged in conducting the business of the university.

11. Additionally made defendant in his personal capacity is Joseph Olubadewo (Olubadewo), a person of the full age of majority and a native of the Parish of Orleans, State of Louisiana. Olubadewo is a Christian native of Nigeria, who was at times relevant to the facts of this complaint, a subsequent chair of the Selection (Hiring) Committee, who at times acted under color of state law, engaged in conducting the business of the university.

12. Additionally made defendant in his personal capacity is Henry Mokosso (Mokosso), a person of the full age of majority and a native of the Parish of Orleans, State of Louisiana. Mokosso is a Christian native of

Cameroon, who was at all times relevant to the facts of this complaint, Dean of the College of Arts and Sciences, who at times acted under color of state law, and was engaged in conducting the business of the university.

13. Additionally made defendant in his personal capacity is David Adegboye (Adegboye), a person of the full age of majority and a native of the Orleans, State of Louisiana. Adegboye is a Christian native of Nigeria, who was at all times relevant to the facts of this complaint, Vice-President for Academic Affairs at SUNO, and who at times acted under color of state law, and was engaged in conducting the business of the university.

14. Additionally made defendant in his personal capacity is Victor Ukpolo (Ukpolo), a person of the full age of majority and a native of the Parish of Orleans, State of Louisiana. Ukpolo is a Christian native of Nigeria, who was at all times relevant to the facts of this complaint, Chancellor at SUNO, who at times acted under color of state law, engaged in conducting the business of the university.

15. Kambhampati, Omojola, Olubadewo, Mokosso, Adegboye and Ukpolo are sometimes herein collectively referred to as the "Named Conspirators" or "Named Individual Defendants".

## FACTS

16. Ekaidi was hired as an associate professor in the Biology section at SUNO in 2007. The Biology section is a constituent part of the Department of Natural Science.

17. Ekaidi is a medical doctor who teaches anatomy and physiology in the Department of Biology. He has published scientific research in national and internationally peer-reviewed publications.

18. On or about 2012 Murty S. Kambhampati was named Chair of the School of Natural Sciences.

19. Kambhampati immediately encouraged the departure of non-Nigerian faculty by a policy of denying committee assignments, pay raises, promotion and tenure to otherwise qualified non-Nigerian faculty. Dr. Quincy Quick, Dr. Yolander Youngblood and Tristan Kimbrell left and were replaced by Dr. Michael Iboye, Dr. John Clifford Obih, Dr. Olabisi Ojo—all Nigerian Christians and Dr. Christian Clement--Ghana, Christian.

20. Ekaidi was subjected to a continuous series of acts which, together constituted a hostile work environment which affected a term or condition of his employment. Initially, none of these acts was in and of itself actionable but eventually Ekaidi had his job overtly threatened, his place on a recruitment committee forfeited and his well-qualified application for promotion rejected mainly on the basis of his ethnicity and religion.

21. In 2011 Ekaidi applied for tenure and promotion. Ekaidi received an overall score of 89.5, where only 94 were necessary for tenure. For the first time, Kambhampati concluded, arbitrarily and capriciously, that Ekaidi was unfit for tenure, for the stated reason that the M.D. degree is not a "terminal" degree for promotion and tenure purposes, even though Ekaidi's work significantly increased in both quantity and quality. On this occasion Ekaidi appealed the decision and

was awarded tenure, but was denied promotion to full professor on the pretext that his published work was inadequate. In truth and in fact Ekaidi's published work exceeded every other tenured faculty member in the Department of Natural Sciences both in quantity and quality.

22. In 2013 Ekaidi applied again for promotion and was again denied. His overall score was reduced to 87 from 89.5. This reduction was in the face in spite of Ekaidi objectively having more publications, more university service and more student advising. Specifically, Ekaidi assisted three SUNO students enter medical school; two of Ekaidi's students successfully took the MCAT and were accepted into medical schools and granted international scholarships the same semester.

23. The evaluation process in effect in the Natural Sciences Department in the years 2011 to 2015 was riddled with favoritism based on religion and ethnicity. Analysis of tenure and promotion votes by nationality show extreme partiality when judging areas such as research and publication. The partiality rises to the level of arbitrariness, where the best predictor of an individual's score is the nationality/religion of the applicant and the nationality/religion of the evaluator.

24. In April each faculty member who applied for promotion in 2014 received their promotion files for revision. Ekaidi was the exception. On information and belief SUNO deliberately withheld his promotion file to make it impossible for him to apply for promotion in 2015. When Ekaidi loudly insisted, his promotion file was presented to him just two days before the deadline.

8

25. Ekaidi's promotion application in 2015 was unanimously approved by the departmental committee. However, because Ekaidi had complained to the EEOC specifically naming the departmental chair, Kambhampati overruled the combined judgment of the departmental promotion committee and denied Ekaidi's promotion.

26. In November of 2015 Ekaidi appealed the arbitrary rejection of his promotion application. He was not afforded the published procedure for his appeal. Despite meeting all the published deadlines for filing his appeal papers, SUNO failed and refused to respond to him or grant him any hearing whatever.

27. In June of 2014 Kambhampati, as chair of the Natural Sciences Department, threatened Ekaidi and a junior Muslim faculty member in the Biology section with immediate termination on the thinnest and most transparent of pretexts: for allegedly "comparing notes" with a junior faculty member in the process of making a hiring selection for three Biology positions as members of a departmental hiring committee. This incident was later investigated by a faculty committee and found to be no infraction whatever. In the course of the uproar Kambhampati took the unprecedented step of invalidating the selections of two Muslim job finalists which had been the product of a collaborative effort of approximately twenty scientists in the Natural Sciences department hiring committee only two of which—Ekaidi and the junior faculty member--were Muslims with Biology expertise.

28. In the place of the two Muslim job finalists referred to above, who had been rated numbers two and three for three open positions, an unqualified

9

Nigerian, unexamined and unapproved by the Department of Natural Sciences hiring committee. One of the Nigerians hired never appeared on the list of applicants. She had just completed her M.D., had published no scientific research, she lacked a green card and was pregnant and unable to fulfill her teaching obligation.

29. Ekaidi appealed the entire situation to Arts and Sciences Dean Henry Efesoa-Mokosso, a Cameroonian Christian, who approved the irregular and tainted hiring process.

30. Ekaidi applied for a leave of absence to visit war-torn Syria on an occasion of a family emergency of the worst sort. On August 21, 2014 Ekaidi was asked to complete his time sheet and when he experienced some difficulties he called the secretary of the department of Natural Sciences, Mary R. Richter, for assistance. Richter went to ask the chair, Kambhampati, a question related to Ekaidi's enquiry. With no provocation whatsoever, Kambhampati began to yell and scream at the secretary. His exact words were, "why did you bring this form to me? Why didn't Dr. Ekaidi bring it? He doesn't want to talk to me?" She replied, "he's here." Violent yelling and shouting with the office door open and students in the office ensued. The secretary was ordered to leave Kambhampati's office and began to sob. Ekaidi then entered Kambhampati's office and asked for an explanation. Kambhampati was in a violent rage to the point where Ekaidi reasonably feared for his physical safety.

31. On September 3, 2014 Ekaidi wrote David Adegboye, Vice-Chancellor for Academic Affairs, Nigerian, to complain of ethnic and religious

10

discrimination. Ekaidi described in detail the incidents above, paragraph 27, and requested that order and safety be restored to the department. He further informed Adegboye that he would again be applying for promotion and that he desired that he be reviewed by different faculty in the interest of fairness. Adegboye entirely ignored Ekaidi's requests.

32.    In 2015 the Natural Sciences Department was tasked to hire two Biology positions. Dr. Kambhampati was out of the country and named Joe Omojola as the acting head of the Natural Sciences Department. Omojola in turn named Joseph Olubadewo chair of the hiring committee. The hiring committee, consisting of all the membership of the Natural Sciences Department, ranked a Muslim second out of the three finalists. The third ranked finalist was a Nigerian who had no teaching, research or publications in the past ten years. However, the successful Nigerian candidate belonged to a self-proclaimed African Christian organization which included Olubadewo, Adegboye and the other named conspirators as members.

### CLAIMS

#### Conspiracy

33.    In the ways partly described above in paragraphs Kambhampati, Omojola, Olubadewo, Mokosso, Adegboye and Ukpolo conspired on their own, motivated by Ekaidi's and Ansari's race, and/or national origin and/or ethnicity, and without the authority of SUNO or Sothern's Board of Supervisors, to deprive Ekaidi of the privileges, immunities and benefits of his contractual relationship

with SUNO, including Ekaidi's contractual opportunity to acquire the academic and contractual status of full professor. In so doing they deprived Ekaidi of the equal protection and equal privileges of his tenure based contractual relationship with SUNO and the Southern Board of Supervisors, violating 42 U.S.C. § 1985(3). Their actions also led, inter alia, to the creation of a culture of thinly veiled hatred distrust and occasional hostility which sometimes manifested itself in the form of demonstrations violent outbursts of temper and veiled threats of physical violence. Plaintiff specifically seek prospective injunctive relief against all defendants, including the named conspirators.

34. The Board of Supervisors, as employers, violated Title VII of the Civil Rights Act of 1964 and applicable state law, as amended, by negligently permitting its servants Kambhampati, Mokosso, Adegboye and Ukpolo to create a hostile work environment based on nationality, ethnicity and religion, and also by permitting them to take concerted action to deprive Ekaidi of the equal protection and equal privileges of a tenure-based contractual relationship with SUNO as a full professor of Biology on the basis of his religion and/or his nationality and/or his ethnicity.

35. The Board of Supervisors, as employers, violated Title VII of the Civil Rights Act of 1964 and applicable state law, as amended, by denying Ekaidi his promotion to full professor on the basis of his religion and/or his nationality and/or his ethnicity, or, alternately, of rubber-stamping the tainted recommendations of the named conspirators with respect to Ekaidi, with no independent investigation or other inquiry.

### Title VII Discrimination and Retaliation

36. The Board of Supervisors, as employers, and those directly responsible to them, violated the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964 and applicable state law, as amended, by denying Ekaidi promotion to full professor because he had engaged in the protected activity of filing a charge of discrimination with the United States Equal Employment Commission against SUNO and the Board of Supervisors.

37. Plaintiff specifically seek prospective injunctive relief against the named conspirators, acting in their personal capacities, in their Title VII discrimination and retaliation claims.

### Hostile Work Environment

38. The named conspirators took steps create a work environment which, to Ekaidi, was both subjectively and objectively hostile and humiliating. Their actions included, without limitation, shunning, refusing to allow Ekaidi to participate in committee work and research work, conspiring to assure that any committee which evaluated Ekaidi's work for promotion purposes was stacked in such a way as a certain number of their members were always present to assure he would not get the required evaluation. The conspiratorial steps taken by the named conspirators altered the terms or conditions of Ekaidi's employment, since he was being judged professionally by individuals who acted out of illegal and impermissible motives.

39. In furtherance of their plans against Ekaidi, the named conspirators arranged regular, informal meetings, the existence of which non-conspirators were unaware. These meetings were sometimes held at venues controlled by the New Orleans chapter of the so-called African Christian Fellowship. The purpose of these meetings were to plan concerted acts the aim of which was to divert public funds to members of the conspiratorial group and to those other Nigerian students or would-be students or academic staff. At all times relevant hereto, the actions of the named conspirators inured to the disadvantage of Ekaidi and other non-Nigerian members of the SUNO community.

## PRAYER FOR RELIEF

40. WHEREFORE, Plaintiff respectfully prays for judgment against Defendants as follows:

A. For a money judgment representing compensatory damages, including lost wages, past and future wages and benefits, mental and emotional distress, inconvenience and embarrassment for having to sue;

B. For a money judgment against the named conspirators representing punitive damages for Defendants' willful and deliberate disregard for Plaintiff's federally protected rights;

C. For a money judgment representing prejudgment interest at the Louisiana rate of legal interest;

D. That this Court retain jurisdiction over this action until Defendants have fully complied with orders of this Court and that this Court require defendant to file any and all reports necessary and to supervise compliance with

law that any and all matters related hereto be done in conformance with the applicable Title VII provisions.

E. For costs of suit, including an award of reasonable attorney's fees and expert fees and for such other and further equitable relief as may be just and proper. Plaintiffs are entitled to an award of all costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988(b).

41. Plaintiffs demand and are entitled to a trial by jury on all issues so triable.

Respectfully submitted on Plaintiff's behalf,

LAW OFFICE OF DALE EDWARD WILLIAMS
/s/ Dale E. Williams
Dale E. Williams, Bar #18709
212 Park Place
Covington, Louisiana 70433
Telephone: (985) 898-6368
Facsimile: (985) 892-2640

## SWORN DECLARATION

Pursuant to 28 U.S.C. § 1746, I, Ibrahim Ekaidi swear under penalty of perjury that I have read the foregoing Complaint, and it is true and correct to the best of my knowledge and belief.

This has been executed and subscribed by me, Ibrahim Ekaidi, in Covington, Louisiana on this 31st day of May in the year 2016.

_____
IBRAHIM EKAIDI