UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IBRAHIM EKAIDI | CIVIL ACTION |
| VERSUS | No. 16-7523 |
| BOARD OF SUPERVISORS OF THE SOUTHERN UNIVERSITY SYSTEM ET AL. | SECTION I |

### ORDER AND REASONS

Before the Court is the defendants' motion[1] for summary judgment. For the following reasons, the motion is granted.

### I.

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines there is no genuine dispute of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

---

[1] R. Doc. No. 19.

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine dispute is not satisfied by creating "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine dispute of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine dispute. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

## II.

Plaintiff Ibrahim Ekaidi ("Ekaidi") filed this lawsuit accusing the State of Louisiana and certain faculty members of the Southern University at New Orleans ("SUNO") of discriminating against him because of his race, religion, ethnicity, and national origin. He complains that defendants—allegedly a group of Nigerian Christian faculty members and Nigerian Christian sympathizing faculty members at SUNO—took adverse employment actions against him because he is a Syrian Muslim. Specifically, Ekaidi alleges that defendants (1) conspired to discriminate

2

against him in violation of 42 U.S.C. § 1985(3); (2) discriminated against him by removing him from a SUNO hiring committee in violation of Title VII;[2] (3) discriminated against him and retaliated against him by denying him a promotion in violation of Title VII; and (4) created a hostile work environment in violation of Title VII. He also claims that these actions violated "applicable state law." *See* R. Doc. No. 1, at 12-13.

To the extent Ekaidi suggested during a recent telephone conference that each of the allegations advanced in support of his hostile work environment claim should also be considered as stand-alone claims, *see* R. Doc. No. 37, the Court rejects that argument for several reasons. First, the complaint—which actually identifies fewer causes of action in the "Claims" section than the Court described above—cannot be reasonably read in such a manner. Second, even if the complaint could be interpreted in that manner, Ekaidi has failed to satisfy the administrative exhaustion

---

[2] Although Ekaidi's EEOC charge characterizes the defendants' actions with regard to the hiring committee as constituting both discrimination and retaliation, the Court concludes that the only allegation in the complaint properly characterized as a retaliation claim is the claim that Ekaidi was denied a promotion. Indeed, in order to advance a retaliation claim, the alleged adverse employment action must have been taken in retaliation for the plaintiff's engagement in a protected activity. *See Mitchell v. U T L X Mfg., L.L.C.*, 569 F. App'x 228, 230 (5th Cir. 2014). "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Id.* at 231 (quotations and citation omitted). The only "protected activity" described in the complaint is Ekaidi's filing of the EEOC charge. *See generally* R. Doc. No. 1. As the EEOC charge was filed in response to Ekaidi's removal from the committee, the removal itself cannot have been taken in retaliation for engagement in protected activity. Accordingly, the removal from the hiring committee can only be viewed as a Title VII discrimination claim—not a Title VII retaliation claim.

3

requirement as to any allegation which does not pertain to his removal from the hiring committee. Third, apart from the defendants' alleged failure to promote him, none of the individual acts Ekaidi identifies in support of his hostile work environment claim can be considered actionable "adverse employment actions" under Title VII. Being prevented from attending academic conferences and being denied positions on committees, for example, are not adverse employment actions in this circuit.

### III.

The defendants first argue that the claims should be dismissed because Ekaidi failed to exhaust his administrative remedies. Before filing a Title VII claim, "complaining employees must exhaust their administrative remedies by filing a charge of discrimination with the EEO division of their agency." *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006) (citation omitted). Because the Court lacks subject matter jurisdiction over any claims for which plaintiff did not exhaust his administrative remedies, *see Tolbert v. United States*, 916 F.2d 245, 247 (5th Cir. 1990), the Court addresses this issue first.

It is undisputed that Ekaidi filed a discrimination charge with the EEOC prior to initiating this action. Nonetheless, the defendants argue that the claims advanced in the charge are distinct from the claims advanced in this lawsuit and, therefore, the exhaustion requirement has not been satisfied.

The Supreme Court has instructed that "[e]ach incident of discrimination and each retaliatory adverse employment decision" constitutes a separate actionable

4

"unlawful employment practice" for which administrative remedies must be exhausted. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002); *see also Freppon v. City of Chandler*, 528 F. App'x 892, 899 (10th Cir. 2013). Each discrete act—such as "termination, failure to promote, denial of transfer, or refusal to hire"—must be timely challenged and exhausted before the Court will consider that act as the basis for an independent claim. *See id.*

When deciding whether a particular Title VII claim was included in the administrative charge, "the scope of an EEOC complaint should be construed liberally" because most charges are filed pro se. *See Pacheco*, 448 F.3d at 788. The Court's review is defined "not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* at 789 (quotations omitted).

> Ekaidi's charge stated, in pertinent part:
>
> I was hired by Southern University at New Orleans more recently as a Tenured Associate Professor of Biology. During my employment, I was subjected to harassment in that I was singled out of a nine person hiring committee by a Hindu Department Head, accused of deceit, dishonesty, aiding and abetting mediocrity. I was given a letter of reprimand and warned that discharge might follow. In addition, I was also disciplined.
>
> No reason was given for the action taken against me.
>
> I believe I have been discriminated against because of my National Origin, Arab/Afghani/Mid Eastern and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended.

R. Doc. No. 19-4, at 2. In an addendum to the charge, Ekaidi wrote:

> The administrative reprimands and threats of termination involved the only two Muslims on the nine-person search and evaluation committee. There seems to be no factual dispute that the collaborative procedures followed in the

5

> May 16, 2014 selection process were exactly the same as procedures followed in earlier selection committees. At any rate the selection process had traditionally been a collaborative on both at Southern University at New Orleans (SUNO) and at other institutions of higher education in the New Orleans area. The random accusations leveled at both Ekaidi and Atteia were preposterous, at best, and were the barest fig-leaf for open hostility and intimidation on the part of the SUNO administration against two well-qualified and respected faculty members who happened to profess the Muslim faith.
>
> The evaluations of Ekaidi and Atteia were excluded and the original evaluation scores were altered in such a way as to exclude from the interview process two Muslim candidates whom the committee as a whole had previously highly endorsed for interviews. As a direct result two highly qualified Muslim candidates for faculty positions were excluded from the interview process by administrative measures obviously motivated by impermissible considerations of race, religion and ethnic origin.
>
> This incident comes in the context of ongoing student complaints about Federal grant money being awarded to Nigerian students at the expense of highly qualified native African-American students.

R. Doc. No. 19-4, at 3.

**A.**

The defendants admit that the charge encompasses Ekaidi's claim that the defendants discriminated against him by removing him from the SUNO hiring committee. *See* R. Doc. No. 37, at 1. Although neither the charge nor the addendum specifically mentions that Ekaidi was removed from the hiring committee, the Court agrees that the removal claim should be considered exhausted. After all, it is difficult to see how "the scope of the EEOC investigation which [could] reasonably be expected to grow out of" the charge's allegations could not have resulted in the EEOC's review of Ekaidi's claim that his committee membership was terminated. *See Pacheco*, 448

F.3d at 789.³ For the following reasons, however, the Court finds the removal allegation to be the only Title VII violation encompassed by the EEOC charge.

**B.**

All of the factual allegations in the charge pertain to the defendants' purported decision to remove Ekaidi from the committee on pretextual grounds in order to exclude Muslims from the hiring process. Notably absent from the charge are most of the allegations in Ekaidi's complaint. The charge nowhere mentions that Ekaidi was denied a promotion. It does not describe the alleged pattern of abusive conduct to which Ekaidi was subjected each time he applied for a promotion. It does not mention the incident which Ekaidi alleges occurred when he applied for a leave of absence to visit Syria. It does not mention that Ekaidi was denied other committee assignments or that he was denied research work.

"[A] primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims." *Pacheco*, 448 F.3d at 788-89 (citation omitted). This Court cannot permit a Title VII claim to advance unless "the EEOC has first had the opportunity to attempt to obtain voluntary compliance." *Id.* at 789 (quotations

---

³ While the defendants admit that the hiring committee claim is exhausted, they take the position that the complaint does not challenge Ekaidi's removal from the hiring committee. Although it is true that Ekaidi does not list his removal from the hiring committee as a distinct claim under the "Claims" section of his complaint, *see* R. Doc. No. 1, at 11-14, elsewhere the complaint mentions his removal from the hiring committee as a form of Title VII discrimination, *see, e.g.*, R. Doc. No. 1, at 2 ¶ 1. The complaint makes adequately clear that Ekaidi intended the removal claim to be considered.

omitted). The majority of the factual allegations described in the complaint in support of the hostile work environment claim relate to the defendants' alleged failure to promote Ekaidi. *See* R. Doc. No. 1, at 13 ¶ 38-39. The remaining allegations in the complaint in support of the hostile work environment claim are allegations that Ekaidi was systematically shunned, that he was excluded from committee and research work, and that the defendants conducted regular informal meetings in furtherance of their discrimination.

As established in the preceding paragraphs, the EEOC charge does not mention the failure to promote or, indeed, any of the other allegations described in support of the hostile work environment claim. *See* R. Doc. No. 19-4, at 3. The EEOC could not have reasonably been expected to investigate the hostile work environment claim during the administrative proceedings. While Ekaidi devotes a substantial part of of his brief to arguing that the hostile work environment claim should be considered timely because it was a "continuing violation," *see* R. Doc. No. 33, at 12-16, it is not the timeliness of his claim which is being challenged here.[4] In sum, because the hostile work environment claim was not encompassed by Ekaidi's EEOC charge, this Court lacks subject matter jurisdiction to consider it.

## C.

The same is true with respect to Ekaidi's accusation that he was wrongfully denied a promotion. Ekaidi nonetheless protests that his retaliation claim falls

---

[4] Ekaidi's brief also inexplicably devotes an extended paragraph to setting forth the elements of a Title VII sexual discrimination claim, *see* R. Doc. No. 33, at 15-16, even though there is no allegation of sexual discrimination in this case.

within the *Gupta* exception to the exhaustion requirement. But Ekaidi misunderstands the scope of that exception. "The *Gupta* exception allows a plaintiff to proceed in district court on an unexhausted retaliation claim if that claim is alleging retaliation for properly bringing an exhausted claim before the district court." *Sapp v. Potter*, 413 F. App'x 750, 752 (5th Cir. 2011) (citing *Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981)). In other words, the exception eliminates the exhaustion requirement for retaliation claims "growing out of an earlier charge." *See Gupta*, 654 F.2d at 414.

Critically, however, the Fifth Circuit "has not applied the *Gupta* exception to claims in which both retaliation and discrimination are alleged." *Simmons-Myers v. Caesars Entm't Corp.*, 515 F. App'x 269, 273 (5th Cir. 2013) (citations omitted); *see also Sapp*, 413 F. App'x at 752-53. If the plaintiff's complaint alleges that an adverse employment action was taken not only as retaliation but also as a form of discrimination, dismissal of the discrimination claim and the retaliation claim is required. The reason is that dismissing only the discrimination claim and permitting simultaneous proceedings before this Court and the EEOC for the same inciting event would "thwart the administrative process and peremptorily substitute litigation for conciliation." *See McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008).[5]

---

[5] In *Sapp*, for example, the Fifth Circuit held that the *Gupta* exception did not apply where the plaintiff alleged that the Postal Service had terminated her employment both because she had filed a charge with the EEO and because "it was discriminating on the basis of race, sex, and disability." *See Sapp*, 413 F. App'x at 751, 752-53.

9

The complaint alleges that the defendants denied Ekaidi a promotion to full professor in retaliation for his filing a complaint with the EEOC.  *See* R. Doc. No. 1, at 13 ¶ 36-37.  Tellingly, however, Ekaidi titled this section of his complaint "Title VII *Discrimination* and Retaliation," R. Doc. No. 1, at 13 (emphasis added), and elsewhere the complaint alleges that "Ekaidi had his job overtly threatened, his place on a recruitment committee forfeited and his well-qualified application for promotion rejected *mainly on the basis of his ethnicity and religion*," R. Doc. No. 1, at 7 ¶ 20 (emphasis added).  The complaint continues: "The evaluation process in effect in the Natural Sciences Department in the years 2011 to 2015 was riddled with favoritism based on religion and ethnicity.  Analysis of tenure and promotion votes by nationality show extreme partiality when judging areas such as research and publication.  The partiality rises to the level of arbitrariness, where the best predictor of an individual's score is the nationality/religion of the applicant and the nationality/religion of the evaluator."  R. Doc. No. 1, at 8 ¶ 23.  At one point, the complaint bluntly alleges that the defendants violated Title VII by "denying Ekaidi his promotion to full professor on the basis of his religion and/or his nationality and/or his ethnicity."  *See* R. Doc. No. 1, at 12 ¶ 35.[6]

---

[6] The fact that Ekaidi's Title VII retaliation claim overlaps with a Title VII discrimination claim is further supported by the complaint's allegation that Ekaidi was wrongfully denied advancement from 2011 to 2015.  As Ekaidi filed his EEOC charge in January 2015, *see* R. Doc. No. 19-4, at 2, Ekaidi's claim that he was wrongfully denied promotion in the years preceding 2015 cannot be characterized as solely a retaliation claim.

Because Ekaidi advances both a Title VII retaliation claim and a Title VII discrimination claim based on the same inciting event—his failure to receive a promotion—Ekaidi cannot take advantage of the *Gupta* exception to avoid the exhaustion requirement. The EEOC must first have an opportunity "to attempt to obtain voluntary compliance," *Pacheco*, 448 F.3d at 789 (quotations omitted), before this Court can consider the failure-to-promote retaliation claim and the failure-to-promote discrimination claim.

## IV.

Ekaidi's only remaining Title VII claim is his discrimination claim premised on his removal from the SUNO hiring committee. The defendants argue that Ekaidi cannot make out a prima facie case of discrimination. For the following reasons, the Court agrees.

A plaintiff who seeks to prove that his employer discriminated against him in violation of Title VII can do so by submitting either direct evidence of intentional discrimination or, more commonly, circumstantial evidence. *See Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Because Ekaidi offers only circumstantial evidence in support of his claim, the three-part framework established in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), applies. *Septimus v. Univ. of Houston*, 399 F .3d 601, 608-09 (5th Cir. 2005). First, the plaintiff must make out a prima facie case of employment discrimination by proving that he:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was

treated less favorably than other similarly situated employees outside the protected group.

*McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam) (citations omitted); *see also Paske v. Fitzgerald*, 785 F.3d 977, 985 (5th Cir. 2015).

If the plaintiff carries his burden, a presumption arises that the employer unlawfully discriminated against him. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The defendants, in turn, may rebut this presumption by articulating "a legitimate, nondiscriminatory reason for [their] decision." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802). If the defendants produce evidence of a nondiscriminatory reason for the alleged unlawful action, the burden shifts back to the plaintiff to prove that "the employer's proffered reason is not true but instead is a pretext for the real discriminatory . . . purpose." *McCoy*, 492 F.3d at 557 (citation omitted). The plaintiff may do so either "through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence, meaning that the explanation is not the real reason for the adverse employment action." *Laxton*, 333 F.3d at 578 (quotations omitted).

This Court does not view Ekaidi's removal from the SUNO hiring committee as an "adverse employment action." The Fifth Circuit has adopted a "strict interpretation" of the adverse employment element, whereby an employment action "that does not affect job duties, compensation, or benefits" is not an adverse employment action. *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (quotations omitted). An adverse employment action consists of "decisions such as

hiring, granting leave, discharging, promoting, and compensating," *see id.* (quotations omitted), because "Title VII was only designed to address *ultimate* employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions," *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 878 (5th Cir. 1999) (emphasis in original) (quotations omitted).

Ekaidi admitted during his deposition that participation on the hiring committee is voluntary and that faculty members do not receive extra compensation for their participation. *See* R. Doc. No. 19-6, at 26 ll 20-22. Ekaidi further admitted that being a member of the committee earns a professor "zero point[s]" in his application for a promotion. *See* R. Doc. No. 19-6, at 27 ll 2-7, 10-14. Only the Chair of the committee receives a benefit from his committee participation when being considered for promotion. *See* R. Doc. No. 19-6, at 27 ll 6-9. Indeed, this Court has located nothing in the record—and Ekaidi has identified nothing—to suggest that membership on the committee affects hiring, granting leave, discharging, promoting, or compensating in any way. As such, the Court is of the opinion that Ekaidi's removal from the committee was not an adverse employment action within the strict interpretation adopted by the Fifth Circuit.

But even assuming that Ekaidi did suffer an adverse employment action and that Ekaidi can satisfy the other elements of a Title VII prima facie case, Ekaidi still has not demonstrated that the defendants' proffered reason for removing him from the committee was pretextual. Defendants have rebutted the presumption that

discrimination occurred by articulating "a legitimate, nondiscriminatory reason for [their] decision," *Russell*, 235 F.3d at 222 (citation omitted), i.e., that Ekaidi was removed from the hiring committee for improperly copying the candidate evaluations of another committee member.

The members of the hiring committee were asked by its Chair, defendant Joe Omojola, to independently assess the credentials of candidates for hire. The Committee would then assemble at a specified time to discuss the candidates, tabulate a summary calculation, and make a recommendation as a group. Ekaidi, by his own admission, felt rushed when reviewing candidates because the deadline for providing his feedback to the committee coincided with final exam week. *See* R. Doc. No. 19-6, at 9 ll 11-20. Ekaidi asked another committee member, Professor Bashir Atteia, to share her candidate evaluations with him. A comparison of Professor Atteia's evaluations, R. Doc. No. 19-6, at 28, and Ekaidi's evaluations, R. Doc. No. 19-6, at 29, revealed that they are almost identical. When the committee realized as much, they removed Ekaidi and Professor Atteia from the committee and did not consider their scores when evaluating candidates. *See* R. Doc. No. 19-7, at 2.

Because the defendants have advanced a non-discriminatory reason for removing Ekaidi from the committee, the burden shifts to Ekaidi to demonstrate that "the employer's proffered reason is not true but instead is a pretext for the real discriminatory . . . purpose." *McCoy*, 492 F.3d at 557 (citation omitted). "To carry this burden, the plaintiff must produce substantial evidence" that rebuts the proffered reason. *Laxton*, 333 F.3d at 578 (citation omitted). A plaintiff may do so

14

"either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Id.* (quotations omitted). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Id.* (citation omitted).

First, Ekaidi "has not shown disparate treatment, because [he] has not presented any similarly situated comparators." *See Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 218 (5th Cir. 2016). Second, Ekaidi has not introduced substantial evidence showing that the defendants' proffered reason is false or unworthy of credence. To the contrary, the authority cited in the defendants' brief establishes in minute detail that Ekaidi copied Professor Atteia's evaluations. Although Ekaidi emphasizes that he was subsequently exonerated of any wrongdoing by a faculty committee, *see* R. Doc. No. 33, at 11, that exoneration does not constitute "substantial evidence" that the hiring committee's stated reason for removing Ekaidi and Professor Atteia was pretextual. After all, Ekaidi does not claim that the subsequent investigation found wrongdoing on behalf of the hiring committee, and he cannot refute that the two evaluations are practically identical. Even if he disagrees with the defendants' characterization of his actions, Ekaidi fails to provide substantial summary judgment evidence that the employer's proffered reason was pretextual. *See McCoy*, 492 F.3d at 557 (citation omitted).

Even if Ekaidi had introduced sufficient evidence establishing that the defendants' proffered reason for removing him was pretextual, he creates at most "a weak issue of fact as to whether the employer's reason was untrue," and "there [is]

15

abundant and uncontroverted evidence that no discrimination occurred." *See Laxton*, 333 F.3d at 578 (citation omitted). As such, summary judgment would still be appropriate.

"A decision as to whether judgment as a matter of law is appropriate ultimately turns on the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *See id.* at 579 (quotations omitted). The strength of the defendants' proffered reason for terminating Ekaidi compels the Court to conclude that no genuine dispute of material fact exists as to this Title VII claim. Ekaidi simply cannot carry his burden in light of the strong record evidence documenting the reason for his removal from the hiring committee. As such, this claim must be dismissed.

## V.

While Ekaidi's conspiracy claim under 42 U.S.C. § 1985(3) does not fall under Title VII and contains no exhaustion requirement, the U.S. Supreme Court has specifically recognized that Section 1985(3) claims cannot be used to circumvent the exhaustion requirements of Title VII. As the Court wrote in *Great American Federal Saving & Loan Association v. Novotny*:

> If a violation of Title VII could be asserted through § 1985(3), a complainant could avoid most if not all of these detailed and specific provisions of the law. Section 1985(3) expressly authorizes compensatory damages; punitive damages might well follow. The plaintiff or defendant might demand a jury trial. The short and precise time limitations of Title VII would be grossly altered. Perhaps most importantly, the complaint could completely bypass the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII . . . .

> [W]e conclude that § 1985(3) may not be invoked to redress violations of Title VII. It is true that a § 1985(3) remedy would not be coextensive with Title VII, since a plaintiff in an action under § 1985(3) must prove both a conspiracy and a group animus that Title VII does not require. While this incomplete congruity would limit the damage that would be done to Title VII, it would not eliminate it. Unimpaired effectiveness can be given to the plan put together by Congress in Title VII only by holding that deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3).

442 U.S. 366, 375-378 (1979) (citations omitted).

Ekaidi does not address *Great American* in his brief. Nevertheless, the Fifth Circuit continues to recognize *Great American* as binding law. *See Washington v. Atmos Energy Corp.*, No. 07-50296, 2007 WL 2493492, at *1 (5th Cir. Sept. 4, 2007) (affirming dismissal of a Section 1985(3) conspiracy claim under *Great American*). Accordingly, the Section 1985(3) claim that defendants conspired to violate Title VII must be dismissed with prejudice.

But the complaint also advances a Section 1985(3) claim that the defendants conspired to deny Ekaidi his right to equal protection under the U.S. Constitution. *See* R. Doc. No. 1, at 11-12 ¶ 33. The Fifth Circuit has held that the same set of facts can give rise to both a Section 1985(3) claim and a Title VII claim as long as the Section 1985(3) conspiracy claim alleges the violation of a right other than a right created by Title VII. *See Southard v. Texas Bd. of Crim. Justice*, 114 F.3d 539, 549-50 (5th Cir. 1997). The right to sue based on discrimination in the private workplace is created by Title VII. *See Shelley v. Kraemer*, 334 U.S. 1, 13 (1948) (The Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful"); *Ratliff v. City of Milwaukee*, 795 F.2d 612, 624 (7th Cir.

1986). But the right to be free from such discrimination in the public workplace is created by the Constitution. *See Southard*, 114 F.3d at 549-550 ("[T]he Constitution provides a right independent of Title VII to be free from race discrimination by a public employer." (citations omitted)). Accordingly, in *Southard*, the Fifth Circuit recognized that a *public* employee had an independent right to equal protection under the Fourteenth Amendment that was sufficient to invoke section 1983 and section 1985 remedies in addition to the Title VII claim. *See id.* at 550 (emphasis added).

Ekaidi is a public employee. As such, he can theoretically assert a Section 1985(3) conspiracy claim in conjunction with a Title VII claim. However, Ekaidi's Section 1985(3) claim cannot survive summary judgment because he has failed to advance a prima facie case. To state a cognizable claim under Section 1985(3), a plaintiff must allege: (1) a conspiracy between two or more individuals; (2) for the purpose of depriving a person or class of people of the equal protection of the laws or of equal privileges and immunities under the laws; and (3) an act committed in furtherance of the conspiracy that injures a person or deprives him of a right or privilege of a citizen of the United States. *See Anderson v. City of Dallas*, 116 F. App'x 19, 32 (5th Cir. 2004). In this circuit, the only type of conspiracy actionable under Section 1985(3) is one motivated by racial animus. *Id.* Accordingly, Ekaidi's claims that the defendants conspired against him because of his ethnicity, religion, and national origin must be dismissed.

With respect to Ekaidi's remaining Section 1985(3) claim that the defendants conspired against him because of his race, the Court also concludes that the claim

should be dismissed. As a number of courts have recognized in a similar context, school faculty members and administrators are usually considered a "single entity" that is incapable of conspiring with itself for the purposes of Section 1983 and 1985(3) claims. *See Reynosa v. Wood*, 134 F.3d 369, at *2 (5th Cir. 1997) (per curiam) (gathering cases).[7] As the Fifth Circuit wrote in *Reynosa*, "where all of the defendants are members of the same collective entity, the conspiracy does not involve two or more people." *Id.* at *2; *see also Hardesty v. Waterworks Dist. No. 4 of Ward Four*, 954 F. Supp. 2d 461, 474 (W.D. La. 2013) (recognizing continued vitality of rule). As all of the defendants in this case are faculty members and administrators at SUNO, the Section 1985(3) claim should be dismissed.

## VI.

Finally, the complaint alleges that Ekaidi asserts claims under "applicable state law." *See* R. Doc. No. 1, at 13 ¶ 36. The complaint nowhere identifies a specific cause of action. Neither does the plaintiff's briefing in response to defendants' motion. Accordingly, the unidentified and un-argued state law claims are dismissed without prejudice.[8]

---

[7] *See, e.g.*, *Moody v. Jefferson Parish Sch. Bd.*, 803 F. Supp. 1158, 1166 (E.D. La. 1992) (school board, principal, vice-principal, and various teachers are all employed by the Jefferson Parish School Board and are therefore a single entity) *aff'd*, 2 F.3d 604 (5th Cir. 1993); *Hankins v. Dallas Indep. Sch. Dist.*, 698 F.Supp. 1323, 1330 (N.D. Tex. 1988) (high school and its officials constitute a single entity); *Chambliss v. Foote*, 421 F. Supp. 12, 15 (E.D. La. 1976) ("[T]he university and its officials are considered as constituting a single legal entity which cannot conspire with itself.") *aff'd*, 562 F.2d 1015 (5th Cir. 1977), *cert. denied*, 439 U.S. 839 (1978).

[8] In the non-federal employer context, some courts have recognized that state law claims arising out of the same conduct that constitutes the Title VII violation are preempted by Title VII. *See Goins v. Hitchcock Indep. Sch. Dist.*, 191 F.Supp.2d 860,

## VII.

For the foregoing reasons,

**IT IS ORDERED** that the motion is **GRANTED** and that the hostile workplace claim, the failure to promote retaliation claim, the failure to promote discrimination claim, and any state law claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the 42 U.S.C. § 1985(3) claim and the Title VII retaliation claim premised on Ekaidi's removal from the SUNO hiring committee are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, February 22, 2017.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

---

871–72 (S.D. Tex. 2002). Other courts disagree. *See Johnson v. Blue Cross/Blue Shield of Texas*, 375 F. Supp. 2d 545, 548 (N.D. Tex. 2005). The Court need not weigh in on that dispute, as the plaintiff's failure to identify a cause of action and his failure to brief any cause of action is sufficient to warrant dismissal of the state law claims.